NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN CATOGGIO,<br><br>Plaintiff,<br><br>v.<br><br>SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 25, AFL-CIO, *et al.*,<br><br>Defendants. | Civil Action No. 17-11674 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Steven Catoggio's Motion to Remand this case to the Superior Court of New Jersey, Passaic County. (ECF No. 17). Defendant Alliance Industries, LLC ("Defendant Alliance") filed opposition, (ECF No. 20), but Defendant Sheet Metal Workers International Association, Local 25, AFL-CIO ("Defendant Union") did not file opposition in the time provided by the Federal Rules of Civil Procedure and the Local Civil Rules, (*see* Docket Sheet). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court grants Plaintiff's Motion to Remand.

I. **BACKGROUND**

On October 11, 2011, Plaintiff began working for Defendant Alliance as a truck driver. (ECF No. 1-1 ("Compl.") ¶ 6). Three weeks later, Defendant Alliance assigned Plaintiff extra duties, such as metal cutting, assembling equipment, and heating, ventilation, and air conditioning

1

duct work. (Compl. ¶ 7). Though this work required union membership and special training through an apprenticeship, Plaintiff was not a member of a union or apprenticeship program when he was first assigned these duties. (Compl. ¶ 7). Because Plaintiff excelled at the metal and duct work he was assigned, the foreman at Defendant Alliance encouraged Plaintiff to apply for an apprenticeship program. (Compl. ¶ 8).

Plaintiff was subsequently accepted into an apprenticeship program for sheet metal work, which gave him automatic membership to Defendant Union. (Compl. ¶¶ 8–9). To complete an apprenticeship, Plaintiff needed to perform eight six-month terms, equaling four years, as well as attend classes and take a written exam each term. (Compl. ¶ 10). At the conclusion of the apprenticeship, Plaintiff would become a journeyman. (Compl. ¶ 11). An apprentice's pay rate increases each year of the four-year apprenticeship from thirty-five to sixty-five percent a journeyman's salary. (Compl. ¶ 11). Any issues concerning apprentices were referred to Defendant Union's five-member Joint Apprenticeship Training Committee Board ("the JATC"). (Compl. ¶ 25).

Plaintiff began his apprenticeship at Defendant Alliance on January 1, 2012. (Compl. ¶ 12). Shortly after his apprenticeship began, Plaintiff alleges that he witnessed several strange practices at Defendant Alliance. (Compl. ¶¶ 12–14). Specifically, Plaintiff allegedly noticed that newly hired truck drivers and other non-union employees were assigned duties that required union membership and were generally reserved for apprentices and journeymen. (Compl. ¶¶ 12–13). According to Plaintiff, Defendant Alliance also failed to follow the required procedure of reporting workplace accidents to Defendant Union, demeaned injured employees who sought workers' compensation benefits, and terminated employees who sought workers' compensation or who

were suspected of leaking information regarding Defendant Alliance's assignment of union-required duties to non-union member employees. (Compl. ¶ 14).

On August 5, 2015, a non-union worker was cleaning and securing the bucket of a bulldozer—a task that requires union membership—and failed to properly fasten the bucket, causing it to fall on Plaintiff's foot and severely injure him. (Compl. ¶ 15). Plaintiff was taken to the hospital, where he underwent reconstructive surgery, which was unsuccessful and Plaintiff's toes were amputated three weeks later. (Compl. ¶¶ 16–18). Plaintiff alleges that he "also sustained major fractures throughout his foot." (Compl. ¶ 17). Defendant Alliance did not report the accident, and neither did Plaintiff out of fear that Defendant Alliance would retaliate against him. (Compl. ¶ 19).

Three weeks after the accident, Plaintiff contacted the president of the apprenticeship program, Mr. Turner, to inform him that Plaintiff could not attend the upcoming class. (Compl. ¶ 20). Mr. Turner told Plaintiff that he was not aware of Plaintiff's injury, which came as a surprise to Plaintiff. (Compl. ¶ 21). Mr. Turner and the business agent for Defendant Union then went to visit Plaintiff, and advised him to contact the workers' compensation attorney associated with Defendant Union. (Compl. ¶ 22). Plaintiff expressed doubts about contacting the workers' compensation attorney, and explained that other employees of Defendant Alliance were retaliated against for seeking workers' compensation benefits. (Compl. ¶ 22). Plaintiff also told the two men the details of his injury and how a non-union worker was performing duties connected to the bulldozer, in violation of the applicable rules and policies. (Compl. ¶ 23). Mr. Turner and the business agent assured Plaintiff that they would protect him, and Plaintiff retained Defendant Union's workers' compensation attorney. (Compl. ¶ 24). At some point thereafter, Plaintiff began receiving workers' compensation benefits. (*See* Compl. ¶ 28).

In or around October 2015, the majority owner of Defendant Alliance, Mr. Williams, became one of the five board members of the JATC. (Compl. ¶ 25). Around that time, Mr. Williams contacted Plaintiff and informed him that Plaintiff had been cleared for "light duty," and that Mr. Williams wanted Plaintiff to come back to work. (Compl. ¶ 26). However, according to Plaintiff, an employee must be cleared for "full duty," not just "light duty," before returning to work. (Compl. ¶ 26). Furthermore, Plaintiff claims that he had not yet started physical therapy and that his injuries were not fully healed. (Compl. ¶ 27). Rather, Plaintiff participated in physical therapy between November 2015 and March 2016, and was not cleared to return to work on full duty until July 5, 2016. (Compl. ¶¶ 27, 40). Shortly after his October 2015 conversation with Mr. Williams, Plaintiff was contacted by Mr. Turner, who informed him that Mr. Williams was communicating with the union hall in an attempt to cancel Plaintiff's workers' compensation benefits. (Compl. ¶ 28).

These events caused Plaintiff to fear that he would be retaliated against and possibly terminated upon his return to Defendant Alliance for filing a workers' compensation claim. (Compl. ¶ 29). Accordingly, Plaintiff met with the president of Defendant Union, Mr. Demark, on June 23, 2016, and requested that he be transferred to a different company once he was cleared to return to work. (Compl. ¶ 30). Mr. Demark informed Plaintiff that the JATC would have to authorize the transfer, at which time Plaintiff reminded Mr. Demark that Mr. Williams had joined the JATC and that there was a possible conflict of interest. (Compl. ¶ 31). Plaintiff was assured that Mr. Williams would not be involved in the decisionmaking process, but Plaintiff was never informed whether a vote took place or whether a decision was made. (Compl. ¶ 31).

On July 22, 2016, Plaintiff received a letter from the JATC instructing him to contact the Members Assistance Program ("MAP"), which provided services to members of Defendant Union

4

in connection with their finances and personal problems. (Compl. ¶ 32). Plaintiff was further instructed to contact MAP by July 29, 2016, but failed to do so because he was awaiting a decision regarding his transfer request before he took any further action. (Compl. ¶¶ 32–33). On August 17, 2016, the JATC sent Plaintiff another letter informing him that he failed to respond to its previous correspondence regarding MAP, and that Plaintiff was therefore terminated from the apprenticeship program and Defendant Alliance. (Compl. ¶¶ 34, 41). The letter also stated that Plaintiff could not reapply once he was terminated, which Plaintiff alleges is inaccurate as other members were allowed to reapply. (Compl. ¶ 35). According to Plaintiff, the JATC used his failure to respond as a pretext to terminate him, when in reality Plaintiff was terminated in retaliation for filing a claim of workers' compensation benefits and disclosing Defendant Alliance's allegedly improper policies and conduct. (Compl. ¶ 36). Plaintiff further claims that Defendant Alliance discriminated against him by firing him because of his disability, which was caused by his work-related injury. (Compl. ¶¶ 36, 46).

Accordingly, on or around August 11, 2017, Plaintiff brought this action against Defendants in New Jersey Superior Court, Passaic County, seeking reinstatement as well as compensatory and punitive damages. (*See generally* Compl.). In his Complaint, Plaintiff asserts the following causes of action under New Jersey state law: (1) Workers' Compensation Discrimination in Violation of the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-39.1 ("NJWCA"); (2) Disability Discrimination in Violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-5(q) ("NJLAD"); (3) Failure to Provide Reasonable Accommodations in Violation of NJLAD and N.J.A.C. 13:13-2.5(b); (4) Retaliation in Violation of NJLAD, N.J.S.A. 10:5-12(d); (5) Violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 ("NJCEPA"); (6) Violation of Public Policy pursuant to *Pierce v. Ortho Pharm.*

*Corp.*, 84 N.J. 58, 72 (1980) ("New Jersey *Pierce* claim"); and (7) Intentional Infliction of Emotional Distress ("IIED"). (Compl. ¶¶ 37–85).

On November 15, 2017, Defendants removed the case to this Court on the basis of the Court's federal jurisdiction, claiming that Plaintiff's causes of action are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141, *et seq.* ("LMRA"). (ECF No. 1). After the case was removed, Defendant Alliance filed a motion to join the JATC as an indispensable party, which is currently pending. (ECF No. 15). Plaintiff now moves for remand. (ECF No. 17).

## II. ARGUMENTS & ANALYSIS

Federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint," pursuant to the "well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The "well-pleaded complaint rule" establishes that federal courts do not have original jurisdiction over cases where the complaint sets forth a state law cause of action, even if a defendant could raise a federal defense. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9–11 (1983). Therefore, a plaintiff's complaint must establish that the case arises from federal law. *See id.* at 10; *cf. Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004) (holding that removal was improper because the plaintiff's complaint did not present a federal question).

Here, Plaintiff's claims do not arise under federal law, but rather each of Plaintiff's seven causes of action are brought pursuant to New Jersey state law. Specifically, Plaintiff has asserted the following claims based exclusively on state law: violations of the NJWCA; disability-based discrimination, retaliation, and failure to provide accommodations in violation of NJLAD;

violation of NJCEPA; violation of public policy through a New Jersey *Pierce* claim; and IIED. (Compl. ¶¶ 37–85). All of Plaintiff's claims relate to Defendants' discrimination and retaliation against Plaintiff, and do not specifically reference ERISA, LMRA, or any other federal law. Therefore, a strict application of the "well-pleaded complaint rule" would preclude federal jurisdiction over this matter, because the complaint raises no federal claims on its face. *See Franchise Tax Bd.*, 463 U.S. at 13.

### A. ERISA

Defendant Alliance argues that Plaintiff's state law claims are completely preempted by ERISA, because: (1) the JATC's apprenticeship program is allegedly an ERISA governed plan; (2) Plaintiff was a participant in the apprenticeship program and alleges that he was unjustifiably terminated; and (3) Plaintiff seeks reinstatement and to recover the benefits of participating in the JATC's apprenticeship program. (ECF No. 20 at 6). It is true that complete preemption under ERISA is an exception to the "well-pleaded complaint rule." *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (2007). A "participant or beneficiary" of an ERISA benefits plan can bring a civil action under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

A state law cause of action is completely preempted by this section of ERISA "only if: (1) the plaintiff could have brought the claim under [ERISA]; and (2) no other independent legal duty supports the plaintiff's claim." *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp.*, 760 F.3d 297, 303 (3d Cir. 2014) (citations omitted). A legal duty is independent when "it is not based on an obligation under an ERISA plan." *Id.* (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)). Furthermore, the mere "possibility—or even

likelihood—that ERISA's pre-emption provision . . . may pre-empt [a plaintiff's] state law claims" is an insufficient basis to remove the action to federal court. *Pascack Valley Hosp.*, 388 F.3d at 398 (citing *Franchise Tax Bd.*, 463 U.S. at 12).

Here, the Court finds that the claims asserted are not preempted by ERISA. Plaintiff's request for damages is strictly associated with the discriminatory and retaliatory conduct engaged in by Defendants, and appears to be separate from recovering, enforcing, or clarifying benefits under an ERISA plan. (*See, e.g.,* Compl. ¶ 16 ("The reasons provided for Plaintiff's termination were pre-textual in nature and Plaintiff was terminated as a result of his disability")). In fact, Plaintiff specifically argues in support of his Motion for Remand that he "is not seeking to recover benefits due to him under the terms of any plan, or to enforce his rights under the terms of any plan, or to clarify his rights to future benefits under the terms of the plan." (ECF No. 17-2 at 11) (internal quotations omitted). Therefore, the Court finds that Plaintiff could not have brought this case under ERISA.

However, assuming *arguendo* Plaintiff could have *potentially* brought this case under ERISA, the Court finds that there are clear independent legal duties under New Jersey state law that are implicated by Defendants' alleged conduct. Specifically, Plaintiff's claims are based on the allegation that Defendants terminated him in retaliation for (1) reporting their unlawful practice of assigning union-required work to non-union employees, (2) applying for a transfer, and (3) seeking workers' compensation benefits after his injury. Plaintiff further alleges that Defendants discriminated against him when they terminated him because of his injury-based disability, and failed to accommodate his disability. Plaintiff also states that Defendants' assignment of union required work to non-union employees, and retaliation against those who reported same, was contrary to New Jersey public policy. (Compl. ¶¶ 75–76). According to Plaintiff, Defendant's

discriminatory and retaliatory conduct was intentional and caused Plaintiff to suffer damages, including severe emotional distress. (Compl. ¶¶ 79-85). These allegations give rise to the above mentioned New Jersey state law claims regardless of the existence of an ERISA plan. *See Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 173 (3d Cir. 1997) (stating that a claim of "essentially" employment discrimination was not preempted by ERISA where said claim's "sole relationship to an employee benefits plan is that upon termination from his job, [the plaintiff] was no longer eligible for the long-term disability benefits.").

Further evidence that the existence of an ERISA benefits plan is not necessarily relevant to Plaintiff's claims is the fact that, according to Plaintiff, Defendants' motivation in terminating him was not based on a desire to deprive him of ERISA benefits, but rather was done in retaliation for Plaintiff seeking a transfer and workers' compensation benefits and to discriminate against Plaintiff because of his injury-based disability. *See Caivano v. Prod. Workers Union Local 148*, Civil No. 13-5746, 2014 WL 2931183, at *5 (D.N.J. June 30, 2014) (finding that a NJCEPA claim was not preempted where the alleged retaliation was not based on a "benefits-denying" motive); *cf. Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 677 (3d Cir. 2000) (finding complete preemption applied because the defendant had a "benefits-defeating motive," *i.e.*, the defendant terminated the plaintiff in order to deprive him of full retirement benefits). Considering Plaintiff's claims stem from Defendants' alleged discrimination and retaliation in violation of New Jersey state law, and are actionable irrespective of the existence of an ERISA benefits plan, the Court concludes that Plaintiff has an independent legal basis for his claims. Therefore, Plaintiff's claims are not preempted by ERISA.

## B. LMRA

Similarly, the Court finds that Plaintiff's Complaint is not preempted by LMRA. A plaintiff can bring a claim under § 301 of LMRA "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The Supreme Court has established that "an application of state law is pre-empted by [LMRA] . . . if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 (1988). However, a plaintiff's claim that is asserted pursuant to state law is not completely preempted by LMRA if that claim requires no interpretation of a collective-bargaining agreement, even if a court may refer to the collective-bargaining agreement when addressing said claim. *Id.* at 407.

In the current case, Defendant Alliance points out that a collective-bargaining agreement supposedly governs the relationship and obligations between Plaintiff (as a union member), Defendant Union (Plaintiff's union), and Defendant Alliance (the contractor who employed him). (ECF No. 17 at 10). Regardless of this fact, it is apparent to the Court that Plaintiff's claims are not completely preempted by LMRA, because Plaintiff's claims are not dependent on the interpretation of a collective-bargaining agreement. Specifically, for claims asserted under NJLAD, it is well-settled that a collective-bargaining agreement "is neither the source of the plaintiff's claim, nor a document that needs to be consulted to resolve [the] plaintiff's cause of action." *Kube v. New Penn Motor Express, Inc.*, 865 F.Supp. 221, 228 (D.N.J. 1994). This is because "both the existence and the scope of plaintiff's state law discrimination claims under the NJLAD are derived independently from state law, and not from the obligations assumed by the parties under the [collective-bargaining] agreement." *Carrington v. RCA Glob. Commc'ns, Inc.*, 762 F. Supp. 632, 641 (D.N.J. 1991); *see also Mitchell v. Vill. Super Mkt., Inc.*, 926 F. Supp. 476,

478–80 (D.N.J. 1996) (rejecting the notion that it was implicit to the plaintiff's allegations that the union breached its duties to the plaintiff under the collective-bargaining agreement). This analysis extends to Plaintiff's other state law claims as well. *See, e.g., Herring v. Prince Macaroni of N.J., Inc.*, 799 F.2d 120, 124 n.2 (3d Cir. 1986) (analyzing that a claim under the NJWCA is not preempted "[b]ecause workers' compensation rights are rooted in state law, rather than the collective bargaining agreement"); *Reynolds v. TCM Sweeping, Inc.*, 340 F. Supp. 2d 541, 547–48 (D.N.J. 2004) (finding that the plaintiff's NJCEPA claim was not preempted by LMRA because "retaliatory conduct is the focus of his claim and therefore, an interpretation of the [collective-bargaining agreement] is not required.").

If the mere possibility that this Court might need to refer to the terms of a collective-bargaining agreement were to give rise to federal jurisdiction, then "all discrimination actions brought by unionized employees would be preempted because the starting point for every case would have to be the [collective-bargaining] agreement." *Coefield v. Jersey Cent. Power & Light Co.*, 532 F. Supp. 2d 685, 697 n.8 (D.N.J. 2007). This result would be contrary to controlling law, as Plaintiff's state law claims "do not require an analysis of the terms of employment but rather the motivations behind [the defendants' conduct]." *Montana v. Acra Turf Club, LLC*, Civil No. 11-1394, 2011 WL 4703068, at *3 (D.N.J. Oct. 4, 2011). Because Plaintiff's claims merely reference a collective-bargaining agreement, but do not require the Court to interpret the meaning of same, the Court concludes that Plaintiff's claims are not preempted by LMRA.

### III. CONCLUSION

For the aforementioned reasons, the Court hereby grants Plaintiff's Motion to Remand this case to the Superior Court of New Jersey, Passaic County. In doing so, the Court will administratively terminate any other motions that are pending in this action without prejudice, in order to permit the parties to renew their arguments in state court. An appropriate Order follows this Opinion.

Dated: September 13, 2018.

JOSE L. LINARES
Chief Judge, United States District Court